831 F.2d 781
 24 Fed. R. Evid. Serv. 177
 UNITED STATES of America, Appellee,
v.
John SPRINGER, a/k/a John McNeal; a/k/a Neal; a/k/a James
Jones, Appellant.
 No. 86-1707.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1987.
Decided Oct. 20, 1987.
Rehearing Denied Nov. 23, 1987.
 
 Alphonse McMahon, St. Louis, Mo., for appellant.
 Joseph D. Mancano, Asst. U.S. Atty., St. Louis, Mo., for appellee.
 Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.
 FAGG, Circuit Judge.
 
 
 1
 A jury found John Springer guilty of the four counts charged in his criminal indictment: 1) conspiracy to possess with intent to distribute cocaine and phencyclidine (PCP); 2) possession with intent to distribute cocaine; 3) possession with intent to distribute PCP; and 4) possession with intent to distribute PCP. See 21 U.S.C. Secs. 841(a)(1), 846. He now appeals his convictions and we affirm.
 
 
 2
 In early November 1985, paid informant Andrew Chambers met several times with Springer and Damon Simmon in Los Angeles, California, to discuss the purchase of cocaine and PCP. Chambers indicated he represented people from St. Louis who were interested in making the purchase. After reaching an initial understanding on the drug transaction, Springer, Simmon, and Chambers discussed transporting the drugs to St. Louis. Springer and Simmon chose to transport the drugs in a van. Springer obtained the van, and all three men left for St. Louis. Springer and Chambers flew and Simmon drove the van.
 
 
 3
 Once in St. Louis, Springer met with an undercover agent from the Drug Enforcement Agency (DEA) to discuss a price for the PCP and cocaine. Meanwhile, based on the information Chambers had given the undercover agent, law enforcement officers located the van on the interstate highway and recovered approximately one pound of cocaine and a five-gallon can of liquid PCP.
 
 
 4
 After Springer discovered that law enforcement officers had intercepted the van, he and Chambers returned to California. The undercover agent, however, remained in contact with Springer, and negotiations continued for another PCP transaction. As part of the agent's arrangements with Springer, Chambers and Herman Jones flew to St. Louis with a container of PCP stored in a suitcase. The undercover agent seized the suitcase from Jones' hotel room, and his search of the suitcase revealed a five-gallon can containing PCP. Later, Springer was arrested as he arrived in St. Louis on a flight from California. He was carrying the keys to unlock the suitcase containing the PCP.
 
 
 5
 Springer first asserts the district court violated his sixth amendment right to confrontation during defense counsel's cross-examination of Chambers. In response to defense counsel's questions, Chambers stated that he grew up in St. Louis and lived there until 1984. Counsel then asked: "[W]hereabouts did you grow up in St. Louis, the North side?" The Government objected, and after a bench conference, the court sustained the objection.
 
 
 6
 The Supreme Court has established that counsel must be given "the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them." Alford v. United States, 282 U.S. 687, 692, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931); see Smith v. Illinois, 390 U.S. 129, 132, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968). Nevertheless, counsel's right to ask address-related questions is not absolute. See United States v. Spector, 793 F.2d 932, 937 (8th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987). Our inquiry focuses on whether Springer was denied an opportunity to cross-examine Chambers effectively. See id. at 937-38; United States v. Navarro, 737 F.2d 625, 633 (7th Cir.), cert. denied, 469 U.S. 1020, 105 S.Ct. 438, 83 L.Ed.2d 364 (1984).
 
 
 7
 On cross-examination Chambers testified that he left the St. Louis area in 1984 and now lives in Los Angeles. He stated that Andrew Chambers was his given name at birth and the only name he had used while in St. Louis and Los Angeles. Chambers also described his initial contact and working relationship with the DEA.
 
 
 8
 Chambers responded to questions about his employment background, his relationship with a woman in Los Angeles, and his income tax filings. In addition, Chambers responded to vigorous questioning regarding his ability to recall times and dates of meetings and regarding whether he lied about the events underlying the criminal charges to gain favor with the DEA.
 
 
 9
 On direct examination Chambers stated his age and educational background. He further indicated he had never been convicted of any crime in any jurisdiction. Finally, Chambers testified he was not addicted to drugs or alcohol.
 
 
 10
 At the bench conference following the Government's objection, defense counsel told the district court that his question was aimed at Chambers' possible involvement in prior criminal activity in St. Louis. The Government responded that the DEA had found no criminal record for Chambers. The district court made it clear that not withstanding the ruling upholding the Government's objection the court would be willing to allow further questioning concerning Chambers' criminal involvement if defense counsel had some basis for his concern. Defense counsel did not pursue the point again; instead, Springer argues on appeal that the district court's ruling deprived him of the opportunity to identify Chambers with his environment. Springer, however, in making his Alford argument, cannot ignore his counsel's explanation at the bench conference. We believe the district court was justified in believing defense counsel had accepted a ruling that left him with the opportunity to pursue the point he was pressing. Significantly, Springer does not argue on appeal that Chambers was actually involved in criminal activity while he lived in the St. Louis area.
 
 
 11
 Furthermore, our review of the record indicates the jury was exposed to an extensive amount of Chambers' background. Springer was clearly given a meaningful opportunity to identify Chambers with his environment and he was not prejudiced by the district court's ruling. Under the circumstances surrounding Chambers' testimony, we conclude the district court's ruling did not deprive Springer of the opportunity effectively to cross-examine Chambers. See Spector, 793 F.2d at 937.
 
 
 12
 Springer next argues the district court committed error when it refused to grant his motion for judgment of acquittal on count one of the indictment. He contends the Government produced insufficient evidence of a single conspiracy to generate a jury question. We disagree.
 
 
 13
 In reviewing a denial of a motion for acquittal, "we must view the evidence in the light most favorable to the [G]overnment." United States v. DeLuna, 763 F.2d 897, 924 (8th Cir.), cert. denied, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). In addition, we give the Government "the benefit of all reasonable inferences that may logically be drawn from the evidence." Id. A motion for acquittal should be granted when "the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." United States v. Frol, 518 F.2d 1134, 1137 (8th Cir.1975) (quoting United States v. Stephenson, 474 F.2d 1353, 1355 (5th Cir.1973) (emphasis in original)); see also United States v. Brito, 721 F.2d 743, 747 (11th Cir.1983).
 
 
 14
 Count one of the indictment charged Springer with conspiracy to possess with intent to distribute cocaine and PCP. Springer contends the evidence showed two separate conspiracies: a conspiracy relating to the cocaine and a conspiracy relating to the PCP. Further, he asserts he was involved only in the latter conspiracy and was thus prejudiced by the variance between the indictment and evidence. See Kotteakos v. United States, 328 U.S. 750, 772-74, 66 S.Ct. 1239, 1251-52, 90 L.Ed. 1557 (1946).
 
 
 15
 At the heart of a conspiracy lies an agreement to commit an illegal act. United States v. Peyro, 786 F.2d 826, 829 (8th Cir.1986). In a single conspiracy, the participants share common purposes or objectives under one general agreement. See Spector, 793 F.2d at 935-36; United States v. Snider, 720 F.2d 985, 988 (8th Cir.1983), cert. denied, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). Here, Springer and Simmon agreed to transport and deliver cocaine and PCP to St. Louis.
 
 
 16
 Springer argues there was insufficient evidence of agreement for him to possess the cocaine. Constructive possession is "knowledge of presence plus control." United States v. Wajda, 810 F.2d 754, 761 (8th Cir.) (quoting United States v. Caspers, 736 F.2d 1246, 1249 (8th Cir.1984)), cert. denied, --- U.S. ----, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). Here, Springer clearly knew about the cocaine. In addition, Springer helped arrange transportation for the cocaine and negotiated for the sale of the cocaine once in St. Louis. "Power * * * to assure its delivery * * * is evidence of control." United States v. Wells, 721 F.2d 1160, 1162 (8th Cir.1983).
 
 
 17
 The question whether single or multiple conspiracies existed is normally a fact question for the jury. Brito, 721 F.2d at 747. Here, under the applicable standard of review, we conclude the evidence in the record was sufficient for a reasonable jury to find beyond a reasonable doubt that a single conspiracy existed. The district court was correct in denying Springer's motion for acquittal and submitting the issue to the jury.
 
 
 18
 Springer also argues the district court committed error when it denied his motion for acquittal on count two: possession with intent to distribute cocaine. Springer's contentions here are similar to those already discussed and rejected by this court. We find it unnecessary to discuss his arguments further. The district court correctly denied Springer's motion for acquittal on count two.
 
 
 19
 Finally, on count four, Springer argues the Government produced insufficient evidence on which the jury could find he had an intent to distribute the PCP. More specifically, he contends there was little evidence of how much PCP was in the second five-gallon can. Thus, he argues the Government did not prove he intended to distribute the PCP. We disagree.
 
 
 20
 Although Springer may have failed to preserve this issue for our review because he did not move for judgment of acquittal on count four, see United States v. Clark, 646 F.2d 1259, 1267 (8th Cir.1981), we reject his argument on the merits. When a party challenges the sufficiency of the evidence to support a criminal conviction, we view the evidence, including all reasonable inferences that may be logically drawn from it, in the light most favorable to the Government. United States v. Newton, 756 F.2d 53, 54 (8th Cir.1985). Here, the undercover agent testified that after the first five gallons of PCP were seized by the authorities Springer agreed to sell him another five gallons of PCP. Officers then recovered a second five-gallon can of liquid from a suitcase transported by Jones and to which Springer carried the key. Further, although she could not state the amount or strength of the drug in the second five-gallon can, the chemist testified the sample she received from that can contained PCP. Based on the record before us, we conclude there was sufficient evidence on which the jury could find Springer possessed PCP with intent to distribute as charged in count four.
 
 
 21
 Accordingly, we affirm.