UNITED STATES of America, Appellee,

v.

Ronald E. PETERS, Appellant.

No. 89–2814.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1990.

Decided Aug. 16, 1990.

---

Joseph A. Fenlon, Granite City, Ill., for appellant.

James K. Steitz, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, and HENLEY, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Ronald E. Peters appeals from his conviction of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (1988). The district court [1] sentenced Peters to 160 months imprisonment and 5 years supervised release. Peters argues that the evidence used to secure his conviction was seized in violation of his fourth amendment rights, that the government presented insufficient evidence to establish his intent to distribute cocaine, and that the court erred in sentencing him based upon the weight of the cocaine seized. We affirm the judgment and sentence imposed.

A St. Louis Police Department detective received information that an informant believed that drugs were being sold out of room 206 at the Thrifty Inn hotel in St. Louis. The officer contacted the room clerk and learned that the room was rented

---

**1.** The Honorable George F. Gunn, Jr., United States District Court Judge for the Eastern District of Missouri.

to Lafayette Ely. A police computer check revealed that there was an outstanding bench warrant against Lafayette Ely issued by the Municipal Court of the City of St. Louis for failure to appear in traffic court on a charge of driving the wrong way on a one-way street. The detective and four other officers went to the hotel room to make an arrest under the traffic warrant. The officers knocked on the door and Peters opened it. The detective looked into the room through the open doorway and saw a clear plastic bag containing a substance he believed to be crack cocaine, a razor blade, and a scale. The detective immediately drew his revolver and arrested Peters. Lafayette Ely was never found, but his driver's license had been left with the hotel clerk. After the arrest, the police seized the plastic bag and its contents, the razor blade, a cardboard box with a small portable scale, and a Greyhound bus ticket.

## I.

■ Peters first argues that the police seizure of the crack cocaine in his hotel room violated his fourth amendment rights. He maintains that the actions of the police officers in knocking on his hotel room door and in looking into his hotel room through the door after he opened it constituted a search, and, further, that the arrest warrant the officers had for Lafayette Ely was insufficient justification for the search. We are not convinced by Peters' arguments.

We review constitutional issues de novo. *See United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). When an individual voluntarily opens the door of his or her place of residence in response to a simple knock, the individual is knowingly exposing to the public anything that can be seen through that open door and thus is not afforded fourth amendment protection. *United States v. Wright*, 641 F.2d 602, 604 (8th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *see also Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) ("What a person

knowingly exposes to the public, even in his or her own home or office, is not a subject of Fourth Amendment protection."). After Peters opened the door to the hotel room in which he was staying in response to the simple knock on the door by the police officers, a search did not occur when the detective looked into Peters' room through the open doorway. Therefore, any contraband in "plain view," here the crack cocaine and the drug paraphernalia, was properly seized by the officers under the plain view doctrine. *See Horton v. California*, — U.S. —, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); *United States v. Garner*, 907 F.2d 60, 62 (8th Cir.1990). Since we find that the evidence at issue was validly seized, we need not consider Peters' arguments on this issue further.

## II.

■ Peters next argues that the government presented insufficient evidence to establish his intent to distribute crack cocaine. He maintains that the government's only evidence of his specific intent to distribute was the police chemist's testimony concerning the purity of the crack seized and that this evidence alone was insufficient, citing *United States v. Brett*, 872 F.2d 1365, 1370 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). We reject Peters' argument.

Our approach to arguments concerning sufficiency of the evidence is well established. "We must examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. We can only reverse if we conclude that a reasonable fact-finder could not have found the defendant guilty beyond a reasonable doubt." *United States v. Shurn*, 849 F.2d 1090, 1093 (8th Cir. 1988); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). We will "overturn the verdict only if the evidence properly viewed is such that 'a reasonable-minded jury must have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense.'" *Shurn*, 849

F.2d at 1093 (quoting *United States v. Holm,* 836 F.2d 1119, 1122 (8th Cir.1988)).

The burden is on the government to establish that Peters knowingly possessed cocaine with intent to distribute. *Id.* Peters concedes that the fact that he was found with the crack in a hotel room, in which he had spent the night and for which he had a key, is sufficient to establish that he possessed the crack cocaine seized. *See United States v. Matra,* 841 F.2d 837, 840–41 (8th Cir.1988); *Holm,* 836 F.2d at 1123. Peters maintains, however, that the government has failed to establish his intent to distribute.

The government presented no direct evidence on the issue of intent. "Intent to distribute may be established by circumstantial evidence." *United States v. Hollman,* 541 F.2d 196, 199 (8th Cir.1976). When examining circumstantial evidence on this issue, we consider several factors, including: (1) the quantity of drugs involved; (2) the purity of drugs seized; (3) whether a large amount of cash was present; and (4) whether a firearm was present. *Brett,* 872 F.2d at 1370. As Peters notes, the police found neither a large amount of cash nor a firearm when he was arrested. However, substantial circumstantial evidence was presented concerning Peters' intent to distribute. The police chemist testified that the crack cocaine seized was 85 percent pure cocaine base. (Tr. 74–76). Further, a razor blade, with a cocaine residue, and a scale were seized from Peters' hotel room. Testimony was also given that these items are used to facilitate drug transactions. (Tr. 65, 89–90).

Peters maintains that there was no evidence as to the weight of the crack cocaine seized. The police chemist testified, however, that in examining the substance brought to her, she ground up the chunks in order to determine the purity and concluded that it was 85 percent pure cocaine base. (Tr. 74). She then repackaged the evidence in the plastic evidence envelope, marked the results of the analysis, including the weight, and her initials, and packaged it with the evidence tape. (Tr. 76).

The contents of Exhibit # 1, the pulverized crack cocaine, were admitted into evidence in the envelope with the weight 88.34 grams marked on it. There was evidence that 88 grams of crack cocaine would contain 880 dosage units and have a street value of $22,000. (Tr. 89). The record as to the weight of the cocaine certainly could have been developed with more precision and we have no hesitation in urging prosecutors to use more care in establishing the quantity of narcotics. We are satisfied, however, that in this case testimony established that: (1) the weight of the crack cocaine was written on the evidence envelope; (2) the substance in the envelope was pulverized crack cocaine and it had to be kept in a sealed envelope; (3) photographs were taken of the crack cocaine before it was pulverized and it was described as a large rock, the size of a hockey puck, a middle sized rock, and several smaller rocks (tr. 64, 73, 81–82); and (4) a chain of custody existed that tied the quantity of the crack cocaine to the weight written on the evidence envelope. Therefore, we conclude that viewed in a light most favorable to the government there is sufficient evidence to support a finding that the crack cocaine seized weighed 88.34 grams. Moreover, regardless of the weight, we are satisfied that the government established that Peters had in his possession a large amount of crack cocaine, and "[i]ntent to distribute may also be inferred from large quantities of cocaine." *Hollman,* 541 F.2d at 199 (quoting *United States v. Hutchinson,* 488 F.2d 484, 489 n. 10 (8th Cir.1973), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974)).

We are satisfied that the government established Peters' intent to distribute through evidence of the quantity and purity of the crack cocaine seized and the drug paraphernalia seized. Accordingly, we conclude that the jury's verdict should not be overturned.

### III.

█ Finally, Peters argues that the district court erred in sentencing him based upon the weight of the crack cocaine

seized. Peters contends that because of the lack of a specific question and answer, there was no evidence as to the weight of the substance seized. He also argues that permitting the court to determine the amount deprived him of his right to confront all witnesses, his right to a trial by jury, and his right to due process. We are not persuaded by his arguments.

Sentences imposed by district courts under the Sentencing Guidelines are reviewed under 18 U.S.C. § 3742 (1988). We may reverse a sentence only if it was: (1) "imposed in violation of law," *id.* § 3742(a)(1); (2) "imposed as a result of an incorrect application of the sentencing guidelines," *id.* § 3742(a)(2); (3) "greater than the sentences specified in the applicable guideline range," *id.* § 3742(a)(3); or (4) "imposed for an offense for which there is no sentencing guideline and [it] is plainly unreasonable," *id.* § 3742(a)(4).

We could quite properly dispose of this argument on the basis of waiver. Peters' counsel at sentencing stated:

The Court: ... are you disputing the quantity?

Mr. Fenlon: *No, no, I'm not disputing the amount he was found with. I'm disputing the constitutionality of the report* that says 88 grams of—

The Court: Okay.

Mr. Fenlon: —base is the same as 14.9 kilos of pure cocaine.

(Tr. 130) (emphasis added). We are satisfied, however, that the district court acted properly. As we stated earlier, not only was Exhibit # 1, containing the crack cocaine, admitted into evidence at trial with its weight, 88.34 grams, written on it, but also in evidence was testimony stating that the 88 grams of cocaine contained 880 dosage units and that it would have a street value of $22,000. The district court at sentencing stated that the 88 grams had "been properly calculated" (tr. 131) and the sentencing was based on this quantity. We have held that the district court may properly determine the quantity of narcotics in sentencing. *United States v. Wood,* 834 F.2d 1382, 1388 (8th Cir.1987); *United States v. Padilla,* 869 F.2d 372, 381 (8th

Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989). Here the findings were based upon evidence introduced at trial. For these reasons, we are satisfied that the sentence imposed by the court should not be reversed.

IV.

Accordingly, we affirm both the judgment entered and the sentence imposed.