**UNITED STATES of America, Appellee,**

v.

**Philip William PACE, Appellant.**

**No. 89–1136WM.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1989.

Decided Dec. 18, 1990.

R. Steven Brown, Springfield, Mo., for appellant.

Richard E. Monroe, Springfield, Mo., for appellee.

Before ARNOLD, FAGG, and MAGILL, Circuit Judges.

ARNOLD, Circuit Judge.

Philip William Pace was convicted by a jury of possessing cocaine with the intent to distribute it. He assigns two errors on appeal. Pace first challenges the District Court's handling of the jury instructions at his trial. Some instructions were initially omitted, and then given orally before deliberations began, but not sent into the jury room with the other written instructions.

Another instruction that was supposed to be omitted was not. Pace also challenges the District Court's denial of his motion for acquittal. He contends that his jury was not presented with enough evidence to prove beyond a reasonable doubt that he possessed cocaine and intended to sell it. We reverse, because we agree that this record is insufficient to support Pace's conviction. We do not reach the alleged errors in how the jury was instructed.

Pace was stopped for speeding in the early morning hours of February 25, 1988. He and his passenger, Thomas Mason, were just outside Springfield, Missouri. Pace could not produce a driver's license, and Mason (who had informed the Missouri State Trooper he was the station wagon's owner) could not produce the car's registration. After being told that they were on their way to Chicago, the Trooper asked Pace to come back to his police car. Pace volunteered his correct name, address, social security number, and driver's license number. A computer check revealed that Pace's license had been suspended, and that Mason didn't own the station wagon. The Trooper called for assistance, and asked for permission to search the car. Pace signed a written consent form; Mason refused to sign a form but said it was all right to search the car and gave the State Trooper the keys. When the other officer arrived, the car was searched and a huge amount—almost 200 pounds—of what appeared to be cocaine was found in several duffel bags and a suitcase.

Pace and Mason were arrested and tried together. Both men testified at trial. Both men were charged with possessing cocaine and intending to sell it, and conspiring to commit those crimes. At the end of the government's case, and again before the jury retired to deliberate, Pace asked the Court to acquit him because of insufficient evidence. Each time the District Court refused to grant his motion. Pace claimed that he did not know about the cocaine, and that Mason just hired him to help drive the car to Chicago. Though he contended he was acting out of fear for his life, the jury convicted Mason of both crimes. Pace was acquitted of conspiracy, but convicted of possession with the intent to distribute. Pace was later sentenced to ten years and one month in prison.

We review the denial of a motion for acquittal under a deferential standard. All the evidence must be viewed in the light most favorable to the government. This includes giving the government the benefit of all reasonable inferences from that evidence. *United States v. Springer*, 831 F.2d 781, 783–84 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1117, 99 L.Ed.2d 277 (1988). The government's burden in this case was to prove beyond a reasonable doubt that Pace possessed the cocaine and intended to distribute it. *United States v. Matra*, 841 F.2d 837, 840 (8th Cir.1988). Pace argues that the evidence of both his possession and his intent is insufficient as a matter of law. The essence of his contention is that he did not know he was helping transport cocaine. While he was certainly caught driving a car full of drugs, he did not possess them—in the sense of possession that the law recognizes—if he did not know what he had. Likewise, if Pace did not know he was helping transport cocaine, he could not have intended to distribute the drug.

We do not sit as Pace's second jury. It is not our task to reweigh the evidence and remake the verdict. Rather, we must determine if the District Court correctly answered the threshold question: is there enough evidence in this record that could support a guilty verdict, and that therefore called upon the jury to weigh all the evidence and come to a verdict? *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942). The case against Pace becomes, then, a matter of the evidence (and reasonable inferences from that evidence) that speaks to Pace's knowledge of the station wagon's cargo.

We glean the following relevant facts from our study of the record. Pace was found driving a car containing almost 200 pounds of cocaine. The kilogram bricks of cocaine were in four closed containers: two duffel bags in the floorboard of the back seat, a duffel bag in the cargo area, and a

suitcase in the cargo area. That part of the station wagon was almost entirely concealed by a horizontal shade or covering. Pace's travel bag, a maroon vinyl duffel, was in the back seat. Mason put it in the car when he picked Pace up, right before they left Los Angeles. Pace had been in the station wagon for a day and a half. When he wasn't driving, he was asleep in the front seat. A black van, with two people in it, one of whom Mason described as a Colombian, traveled with the station wagon all the way from Los Angeles. At one point in the trip Pace asked Mason why the van was making the trip with them; Mason told him that "it was none of his business, it wasn't his concern." T. 2–141. Pace didn't ask any more questions about the van. Mason testified that he didn't tell Pace what was in his luggage. He told him only that they were taking the car to Chicago and would be flying home. Pace was to earn $250 for the trip. Approximately one year before this trip, Mason employed Pace to help him deliver two cars to Chicago. The Missouri State Trooper who caught Pace speeding testified that though Pace gave him correct personal information, he appeared nervous and fidgety during the questioning.

The prosecutor asked the jury to draw from this evidence the following inferences. First, that the sheer amount of cocaine involved suggested Pace's knowledge. Second, that the street value of these drugs (estimated at between twelve and fifteen million dollars) meant that they would not be casually entrusted to an uninformed outsider. Finally, that the extended amount of time Pace spent in the car meant that he had to have discovered what was in the luggage.

The question is whether, on these facts, Pace's knowledge of the cocaine could be established beyond a reasonable doubt to a reasonable person. We are unconvinced. The evidence proves beyond a reasonable doubt that Pace was present at the ongoing crime of transporting this cocaine. He even helped, however unwittingly, commit that crime. The evidence does not prove, however, that Pace knew that he was helping carry cocaine across the country.

*United States v. Frol,* 518 F.2d 1134, 1137 (8th Cir.1975).

While reasonable inferences from the evidence weigh against the defendant, speculation does not. It is reasonable, for example, to infer that Pace entered the back seat to get in his duffel bag. But without additional evidence that Pace opened or examined Mason's luggage that was in the back-seat floorboard, it is merely conjecture to conclude he knew what those packages contained. There is, moreover, no evidence that Pace ever explored the cargo area of the station wagon, much less that he examined or opened Mason's luggage that was stored there. Without evidence that the individuals in the black van did something to arouse Pace's suspicions— somehow exposed themselves as likely drug traffickers by word or deed—their mere presence does not establish that Pace knew he was in the midst of criminals. Likewise Pace's question about the van and Mason's answer: without additional evidence pointing to the criminal nature of the trip, this exchange does not prove that Pace refused to see what this trip was really about.

Viewed in the light most favorable to the government, the evidence is insufficient to justify a reasonable inference that Pace knew he was driving a car full of cocaine. This case is unlike *United States v. Caves,* 890 F.2d 87, 94–95 (8th Cir.1989), where we held that presence, plus other circumstances apparent to the arresting officer, created probable cause for an arrest. At the relevant time in this instance, events had moved far beyond the arrest and nearly to the end of trial. The case against Pace should not have been submitted to a jury, because a "reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of ..." Pace's criminal intent. *United States v. Noibi,* 780 F.2d 1419, 1421 (8th Cir.1986) (emphasis in original). The District Court erred in not granting Pace's motion for acquittal.

The judgment is reversed, and the cause remanded to the District Court with directions to enter a judgment of acquittal.

MAGILL, Circuit Judge, dissenting.

I respectfully dissent because I believe that the jury was presented with sufficient evidence to support their verdict.

## I.

On February 25, 1988 at 12:45 a.m., Philip William Pace was stopped by a Missouri state patrolman, Officer Matt Brown, for speeding. Tr. 1:78–80.[1] When neither Pace nor his passenger, Thomas John Mason, were able to produce a valid driver's license or vehicle registration, the officer requested and received permission to search the car. Tr. 1:82–84, 89. That search produced approximately 195 pounds of cocaine with a purity ranging from 81–94% and a street value of $12–15 million. Tr. 2:43, 50, 61. This cocaine was stored in 89 bricks which were packed into two large duffle bags and two suitcases. Tr. 1:97–100. Each brick was approximately two inches thick, four inches wide and eight inches long. Tr. 1:92. There were words written on the bricks which appeared to be Spanish names. *Id.* One duffle bag and one suitcase were on the floorboards, immediately behind the driver and front passenger seats. Tr. 1:97. The other two bags were in the cargo area of the station wagon immediately behind the backseat. Tr. 1:96. Even though the bags in the cargo area were covered by a shade, Officer Brown testified that he could see a small portion of the bags as he walked by the station wagon. Tr. 1:112. None of the suitcases with the cocaine were locked. Tr. 1:92–95. Also in the backseat was Pace's bag which contained his personal effects and toiletries. Tr. 1:101. There were no drugs or identifying papers of any kind in Pace's bag. Tr. 1:101.

The jury convicted Pace under 21 U.S.C. § 841(a)(1) for possession of cocaine with intent to distribute. In order to obtain this conviction, the government had to prove beyond a reasonable doubt that Pace (1) knowingly possessed cocaine, and (2) had the intent to distribute it. *United States v. Shurn,* 849 F.2d 1090, 1093 (8th Cir.1988). The first element can be satisfied with a showing of constructive possession. Constructive possession is defined as knowledge of presence plus control. *Id.* Under Eighth Circuit law, constructive possession exists when a person has "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed." *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990). Intent to distribute can be proven by circumstantial evidence such as large quantities of a drug. *Id.* at 955; *United States v. Peters,* 912 F.2d 208, 211 (8th Cir.1990) (88.34 grams of crack cocaine of 85% purity sufficient to infer intent to distribute).

After all the evidence was presented, Pace moved for acquittal on the grounds that no connection between himself and the cocaine had been shown. Tr. 3:15. The district court denied that motion. *Id.* On appeal, Pace challenges the denial of his motion, raising the same sufficiency of evidence argument.

## II.

I agree with the majority that this court must review the district court's denial of Pace's motion for acquittal under a deferential standard. More specifically, this court must "view the evidence, *including all reasonable inferences that may be logically drawn from it,* in the light most favorable to the Government." *United States v. Springer,* 831 F.2d 781, 784 (8th Cir.1987) (emphasis added).

As the majority has correctly stated, this court must not act as a second jury and weigh the evidence anew. Rather, our task is merely to determine whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,*

---

**1.** Due to a typographical error in volume one in the transcript, the page numbers start at 1 and go to 90 and then, when the page number should read 91, it starts at 81 again and continues on through 125. To avoid confusion, all transcript references are to the actual page number, which is not necessarily the page number in the upper right corner of each page. (*E.g.,* a reference to the "second" page 81 appears as Tr. 1:91).

443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *see Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It is not necessary for this court to find that the evidence before the jury ruled out every reasonable hypothesis of innocence; rather, it is "enough that the entire body of evidence be sufficient to convince the factfinder beyond a reasonable doubt of the defendant's guilt." *United States v. Noibi*, 780 F.2d 1419, 1422 (8th Cir.1986). Therefore, this court must affirm the district court unless "the evidence, viewed in the light most favorable to the Government, is such that a reasonably-minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Adkins*, 842 F.2d 210, 212 (8th Cir.1988) (citations omitted; emphasis in original).·

Pace argues that there was insufficient evidence to support the jury's finding that he knew that the four pieces of luggage in the car contained 195 pounds of cocaine. Since juries can rarely know with certainty what a defendant knows, knowledge must often be shown through circumstantial evidence. *United States v. Noibi*, 780 F.2d at 1421. Upon a careful review of the record, I believe that, viewing the evidence in the light most favorable to the government, a reasonably minded jury could have found Pace guilty beyond a reasonable doubt of possession of cocaine with the intent to distribute it.

When Pace was first stopped for speeding, he told the officer that he did not have a driver's license nor registration for the car and that he did not think that Mason had the registration either. Tr. 1:83. At that point, Mason identified himself as the owner of the car and admitted that he did not have the registration. *Id.* Mason then stated that he did not have any proof of ownership, explaining that he had just bought the car and was en route to Chicago to sell it. *Id.* Mason identified himself as a car dealer from Los Angeles. *Id.* When Pace was questioned by the officer in the patrol car, Pace verified Mason's story that they were going to Chicago to sell the car. Tr. 1:84–85. Mason later denied that he said that he was going to sell the car in Chicago. Tr. 1:87. At trial, Pace testified that he did not recall telling the officer that they were going to Chicago to sell the car. Tr. 2:103. Pace testified that he agreed to help Mason drive the car to Chicago and that they were going to leave the car at the O'Hare Airport. *Id.*

The jury heard the evidence that Pace changed his story about what Pace thought was the purpose of the trip. A reasonable jury could have thought that Pace was lying. A reasonable jury could have inferred that Pace's lie was to hide his knowledge of the real purpose of the trip. The jury also heard that in response to the officer's initial request for identification, Pace told the officer that he did not think that Mason had the car registration. A reasonable jury could conclude that Pace knew more about the car and the purpose of the trip than he later testified.

When Pace was in the officer's patrol car, the officer testified that he appeared nervous and very unsettled. Tr. 2:6–7. He also said that Pace rambled on and seemed unnerved by the officer's attempts to redirect the conversation back to Pace, the car, and their destination. *Id.* Pace later testified that he was not nervous while in the patrol car; he was simply cold. Tr. 2:98–99. A reasonable jury could have believed either the officer or Pace. A reasonable jury could have thought that Pace was nervous because he was trying to hide something.

Pace maintained that he was only driving with Mason for the purpose of delivering the car and that once they arrived at their destination, they would immediately fly back to California. Tr. 1:85. For this trip, Pace brought a single piece of luggage that contained personal effects. Tr. 1:85, 101. Mason, his traveling partner, kept his toiletries and change of underwear in a plastic grocery-type bag in the backseat, next to Pace's bag. Tr. 1:101–102. The jury heard testimony that, in addition to Pace's bag, there were two large bags on the floorboards in the backseat. Tr. 1:91. The jury was shown pictures of the suitcases

that held the 198 pounds of cocaine and their location in the car. Tr. 1:95–101.

Given the proximity of the bags of cocaine to Pace's own personal luggage and Pace's claim that they were going to return to California within a day, a reasonable jury might conclude that Pace knew that the extra bags were not Mason's personal luggage and that he knew they were delivering the contents of the suitcases in addition to delivering the car.

Mason testified that Pace did not know that the suitcases were filled with cocaine. Tr. 2:134. However, the jury also heard Mason's story change over the course of the trial. At one point, Mason said that he was a car dealer going to sell a car in Chicago; later he said that he was not going to sell the car, that he was just dropping the car off at the O'Hare Airport; and finally, he said that he was taking the car to Detroit. At one point, Mason said that he was getting paid $1,000 to drive the car to Chicago; he later changed that amount to $500. Mason said that he paid approximately $1,350 [2] for cocaine every two weeks during 1987. Mason also testified that he, his wife, and his kids lived in a $300,000 home, yet Mason also admitted that his income from 1987 was only $8,000.[3] Having heard all this evidence, a reasonable jury could have decided that Mason was lying. A reasonable jury could have disbelieved Mason when he said that Pace had no knowledge of the cocaine. *See United States v. Barbosa,* 906 F.2d 1366, 1368 (9th Cir.1990) (guilty knowledge can be inferred from discrepancies in defendant's statements).

Mason testified that violent Colombian drug lords forced him into making drug-trafficking trips to pay off his cocaine debt.[4] Tr. 2:123–25. He testified that in January and February of 1987, he made four trips from Los Angeles to Detroit to deliver a carload of cocaine. Tr. 2:130. In prior trips, the drug lords always provided Mason's driving companion, but this time, they gave him permission to choose his own driving companion. Tr. 2:143. Mason also said that they did not care whom he chose, nor did they threaten his new driving companion as they had threatened Mason himself, even though Mason's new travelling companion would be driving the car with $12–15 million of their cocaine. Tr. 2:144. A reasonable jury might have accepted the existence of these stereotypical violent Colombian drug lords. However, such a reasonable jury might also have disbelieved Mason's claim that the drug lords were content to leave $12–15 million in merchandise in the hands of a driver ignorant of its existence. A reasonable jury may have also disbelieved the entire story, thereby raising further doubts about any of Mason's testimony.

Pace's attorney raised the issue that there were no weapons located in the car. Tr. 1:121. On redirect, Officer Brown testified that, based on his training and experience, the absence of a weapon indicated:

> that the person with the narcotics is extremely secure in his point of origin and his destination. He's operating in relative security, oblivious from competitors who I believe are the ones that they seek to protect themselves from. They do not want to be robbed, they don't want to be killed themselves, so when they're in a position where the other forces, or the other participants in the conspiracy are unknown to them they usually will be armed and attempt to protect themselves.

Tr. 1:12–13. A reasonable jury might have concluded that the absence of any weapon in the car meant that the owner of the

---

**2.** Mason testified that he used 1.5–2.0 ounces every two weeks. Tr. 2:118. While this cocaine cost him $1,500–$1,800 per ounce, he claims that he usually paid $900 with cash and put the rest on credit. *Id.* Therefore, $1,350 is a conservative estimate of the amount of cash Mason spent on cocaine in a two-week period.

**3.** This does not include his wife's salary as a manager in a dentist's office. Tr. 2:114.

**4.** Mason testified that he accumulated a $35,000–40,000 debt with his drug dealer in 1987. When he told the drug lords that he could not pay off the debt, Mason claims they threatened his life and forced him to transport drugs for them. Tr. 2:121–25.

cocaine was confident in the safety of the cocaine. A reasonable jury might have concluded that Mason could not have been that confident unless Pace was a knowing participant in the drug-trafficking.

Evidence was presented that Pace and Mason were followed by a mysterious black van that supposedly contained approximately four times as much cocaine. Tr. 2:128, 130, 132. Mason testified that the black van had also followed him on his three previous drug-trafficking trips to Detroit. Tr. 2:130. The alleged violent drug lords drove this van and made sure that it was always within six to seven car lengths of the Pace's car. Tr. 2:133. Mason admitted that Pace asked him about the black van. Tr. 2:141. Mason claimed that he told Pace that it was none of his business. *Id.* A reasonable jury might have questioned why Pace would have settled for such an inadequate explanation, given that the van followed them for at least thirty hours and that there were two large bags in the backseat which Pace must have been curious about.

Pace testified that during the trip from Los Angeles, California to Springfield, Missouri, he and Mason stopped at least six times in four different states. Tr. 2:95. Since Mason testified that the black van was "never no more than about seven to six cars away," then it follows that the black van also stopped in the same places and at the same times that Mason and Pace stopped. Furthermore, a reasonable jury might infer that if the drug lords from the black van were supposed to ensure the security of the cocaine, then they were very close to both Mason and Pace at all times during the stop. A reasonable jury might even infer that Mason, Pace and the drug lords from the black van ate at the same restaurants, possibly at the same table.

Pace also testified that he was travelling without his driver's license or any other identification because he forgot his wallet at home. Tr. 2:105. He claims that even though he remembered to bring a suitcase with toiletries, he forgot to bring his wallet. *Id.* A reasonable jury might have

concluded that if Pace really believed that he was merely delivering a car, he would have made certain to bring his driver's license, since his sole purpose for being on the trip was apparently to drive the car.

Pace also admitted to delivering a car to Chicago with Mason in May of 1987. Tr. 2:107. He testified that there were no heavy items of luggage in the car nor was he aware of any cocaine being delivered during that trip. Tr. 2:104. However, the jury heard Mason testify that by the summer of 1987 he was a heavy cocaine user, consuming 1.5–2.0 ounces of cocaine every two weeks. Tr. 2:118. Given the large amount of cocaine Mason consumed on a regular basis and the obvious effects of the drug, a reasonable jury could infer that Pace was aware of Mason's cocaine addiction during the May 1987 trip. Pace testified that he knew Mason for almost two years prior to the February 1988 drug-trafficking trip. Tr. 2:92. He testified that he did some landscaping work for Mason. Tr. 2:93. He also testified that he knew Mason was in the used car business. Tr. 2:93. Therefore, after the May 1987 trip, Pace knew that Mason lived in an expensive house, could afford to pay someone else to clean his garage, and had a heavy cocaine addiction. A reasonable jury could infer that Pace knew that the amount of money Mason needed to support his lifestyle was significantly more than that made by a used car salesman.

Finally, a reasonable jury might infer knowledge from the sheer quantity and location of the cocaine and from the fact that Pace had agreed to drive the car on the cross-country trip. *United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir.1990) (mere possession of substantial quantity of narcotics sufficient to support inference that defendant had knowledge of drugs); *United States v. Walitwarangkul*, 808 F.2d 1352, 1354 (9th Cir.1987) (large quantity of narcotics alone may be sufficient to support finding of knowing possession); *United States v. Guzman*, 446 F.2d 1137, 1139 (9th Cir.1971) (evidence of possession "serves as a substantial basis to draw an inference of ... knowledge"); *see also United States v. Cordova–Larios*, 907 F.2d

40, 41–42 (5th Cir.1990) (passenger had knowing possession of 120 pounds of marijuana stored in suitcases that belonged to driver); *United States v. Battle,* 892 F.2d 992, 1002 (11th Cir.1990) (jury allowed to reject that prudent drug smuggler would permit pilots to remain ignorant of $1 million in drugs stored in cockpit).

While Pace's mere presence may not be enough to establish his guilt, *United States v. Adams,* 799 F.2d 665, 672 (11th Cir.1986); *United States v. Stephenson* 474 F.2d 1353, 1354 (5th Cir.1973), we need not answer that question, because the jury was presented with more evidence than Pace's mere presence. They heard the discrepancies in Pace's story and the value of the drugs found; they also heard a police officer's opinion on the implications of such a large amount of drugs; they saw photographs of the cocaine-laden suitcases that were in the backseat of the car; they heard Mason's incredible story of how he became involved in drug trafficking and hired Pace to drive the car while keeping him ignorant of the 195 pounds of cocaine; they heard the officer testify to Pace's nervousness just before the officer discovered the cocaine; and they heard about the mysterious black van driven by the violent drug lords. The jury's verdict did not rest on Pace's mere presence, but rather on his presence under a particular set of circumstances. *United States v. Adams,* 799 F.2d at 672. Viewing all the evidence in the light most favorable to the government, a reasonable jury could have found Pace had both knowing possession and intent to distribute the 195 pounds of cocaine found in the car he was driving. *See United States v. Price,* 869 F.2d 801, 804 (5th Cir.1989) (sufficient evidence for knowing possession when defendant was nervous during questioning prior to discovery of cocaine even though cocaine not in plain view, defendant's fingerprints not on cocaine and defendant did not attempt to flee); *United States v. Robinson,* 843 F.2d 1, 8 (1st Cir.1988) (sufficient evidence to show crew member's knowing possession when large amount of drugs aboard, voyage fairly long, and reason to believe crew member spent time with captain even though the drugs were hidden in a fake fuel tank and there was no odor); *Paez v. O'Lone,* 772 F.2d 1158, 1159–60 (3rd Cir.1985) (sufficient evidence that passenger had knowing possession when he shared driving chores and a screwdriver was found on dashboard implying that he had access to cocaine hidden in door panel); *United States v. Sutton,* 446 F.2d 916, 920 (9th Cir.1971) (sufficient evidence to show knowing possession by sole driver of a rental car of ten pounds of marijuana found in front tire). Because the jury was presented with sufficient evidence to find that Pace knew about the 195 pounds of cocaine, I would affirm their conviction.

III.

For the foregoing reasons, I believe the majority errs in holding that the district court improperly denied Pace's motion for acquittal.