996 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lynn CADY, a/k/a Lindy Goerndt, Defendant-Appellant.
 No. 92-6312.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1993.
 
 Before: GUY and NELSON, Circuit Judges, and SPIEGEL, District Judge.[1]
 PER CURIAM.
 
 
 1
 The defendant, Lynn Cady, a/k/a Lindy Goerndt, has appealed her conviction for the offense of aiding and abetting the unlawful possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). She alleges three assignments of error. For the reasons stated below, we affirm.
 
 I. Factual Background
 
 2
 On February 14, 1990, Officer J.P. Dollahite of the Shelby County Sheriff's office, stopped a large mobile home travelling 63 miles per hour in a 55 miles per hour zone. Officer Dollahite approached the mobile home and asked the driver, Randall Eklund, for his driver's license. At this point, Officer Dollahite became aware of the strong odor of marijuana emanating from the mobile home. Eklund was placed in the rear of Dollahite's cruiser where the officer completed the citation for speeding. Officer Jimmy Daniels arrived on the scene to assist. Eklund then indicated to the officers that there was another person in the mobile home and she was in possession of the rental agreement. Cady opened the door to the mobile home, spoke briefly with Officer Daniels, and retrieved the rental agreement for him.
 
 
 3
 Lynn Cady, under the name of Lindy Goerndt, and Michael Goerndt were listed as the lessees of the vehicle. Because Eklund was not listed as a driver on the agreement and Officer Dollahite had detected the odor of marijuana, Officer Dollahite's suspicions were aroused. Officer Dollahite asked Eklund if he would consent to a search of the mobile home. Eklund deferred to Cady and she refused to consent to a search of the mobile home.
 
 
 4
 Shortly thereafter, Officer Lanny Hughes arrived on the scene with his drug sniffing dog. The dog subsequently indicated the presence of drugs in the vehicle. When Officer Hughes entered the mobile home he immediately detected the odor of marijuana. Likewise, when Officer Daniels entered the vehicle, he too detected the odor of marijuana.
 
 
 5
 After the dog indicated the presence of contraband in the cabinets, the officers conducted a search inside of the vehicle. They discovered 25 bales of marijuana stacked in the cabinets and the shower area. There were also large garbage bags filled with loose marijuana behind the driver's seat. The marijuana found totaled 494 pounds 13 ounces. When the Appellant and Eklund were arrested, a total of $1227.00 and a beeper were also confiscated from appellant.
 
 
 6
 At trial, Cady testified that: 1) She knew co-defendant Eklund; 2) she had made the inquiries as to the cost of renting the mobile home; 3) she had voluntarily accompanied Goerndt and Eklund to rent the mobile home and had signed the agreement; and 4) on the trip between Texas and Tennessee she ate, slept, and kept clothing in the mobile home.
 
 
 7
 Cady also claimed that when she, Eklund and Goerndt stopped in Dallas, Eklund and/or Goerndt took the mobile home someplace for repairs and they were gone for approximately one-and-one-half hours. Cady contends that sometime during this period persons unknown to her stashed 490 pounds of marijuana in the mobile home so carefully that she did not notice it. She also denied detecting any odor from the marijuana even though she was in the mobile home for approximately eight hours before it was stopped. She claims to have discovered the marijuana only one to two hours before the vehicle was stopped. She admitted to not telling the officers about the drugs.
 
 II. First Assignment of Error
 
 8
 The defendant claims that the district court erred in accepting a jury verdict for which there was insufficient evidence presented at trial from which the jury could establish guilt beyond a reasonable doubt.
 
 Standard of Review
 
 9
 "After Winship [In Re Winship, 397 U.S. 358 (1970) ], the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether it believes that the evidence at trial establishes guilt beyond a reasonable doubt.' Woodby v. INS, 385 U.S. 276, 282 (1966). Instead, the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Johnson v. Louisiana, 406 U.S. 356, 362 (1972)." Jackson v. Virginia, 443 U.S. 307, 318-319 (1977).
 
 Discussion
 
 10
 It must be determined if the district court correctly answered the threshold question: is there enough evidence in this record that could support a guilty verdict? The case against defendant becomes a matter of the evidence and reasonable inferences therefrom that speaks to Cady's knowledge of the mobile home's contents.
 
 
 11
 In light of the standard of review, the government did present sufficient evidence where the jury, the trier of fact, could have found the defendant guilty beyond a reasonable doubt.
 
 
 12
 Cady relies on the proposition that she was innocently in a location in which contraband was found. She relies primarily on United States v. Pace, 922 F.2d 451 (8th Cir.1990) and United States v. Pena, 983 F.2d 71 (6th Cir.1993). Both cases are factually distinguishable. In fact, in Pace, the Court itself made this distinction: "[t]his case is unlike United States v. Caves, 890 F.2d 87, 94-95 (8th Cir.1989), where we held that presence, plus other circumstances apparent to the arresting officer, created probable cause for an arrest." Pace, 922 F.2d at 453 (emphasis added). Likewise, Pena is distinguishable. In that case we held that the evidence was insufficient to establish that Pena knew of the presence of the contraband in the car or that she took any steps to assist in the transportation or delivery of that contraband. The act of being a passenger in a car, of guilt by association, is insufficient to convict. Id. at 73. That is clearly is not the situation here.
 
 
 13
 The government put on evidence to show that: 1) defendant was a co-lessee of the mobile home; 2) she knew co-defendant Eklund and a Michael Goerndt, and she was with them when they picked up the vehicle; 3) she was in the mobile home for approximately eight consecutive hours; 4) she stored clothing in the vehicle, ate and slept in the vehicle; 5) moreover, her belongings were in the same compartments as some of the marijuana; 6) she had complete and total access to all the compartments in the vehicle; 7) she admitted she knew the marijuana was present in the vehicle; and 8) she refused to consent to a search of the vehicle. There was also testimony from three officers that a drug sniffing dog indicated there were drugs in the vehicle and all three officers detected the odor of marijuana. This evidence, taken in its totality, presents sufficient evidence where a jury could have found the defendant guilty beyond a reasonable doubt.
 
 III. Second Assignment of Error
 
 14
 The defendant claims that the district court erred in submitting to the jury an instruction on the issue of aiding and abetting and that it was not harmless error.
 
 Standard of Review
 
 15
 "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984), aff'd after remand, 757 F.2d 770 (6th Cir.), cert. denied, 472 U.S. 1029 (1985).
 
 Discussion
 
 16
 Cady claims that the district court erred in submitting the aiding and abetting charge to the jury because Randall Eklund, the person whom she was charged with aiding and abetting was acquitted at the earlier trial and, thus, there was no one she could have aided and abetted.
 
 
 17
 The authority on point for this issue is Standefer v. United States, 447 U.S. 10 (1980). In that case, the Supreme Court ruled that a defendant accused of aiding and abetting in the commission of a federal offense could be convicted of that charge after the named principal had been acquitted of that offense.
 
 
 18
 The Standefer case reads in pertinent part:
 
 
 19
 The enactment of 18 U.S.C. § 2 in 1909 was part and parcel of this same reform movement. The language of the statute, as enacted, unmistakenly demonstrates this point:
 
 
 20
 "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal. " Act of Mar. 4, 1909, § 332, 35 Stat. 1152 (emphasis added) [footnote omitted].
 
 
 21
 The statute abolishe[d] the distinction between principals and accessories and [made] them all principals." Hammer v. United States, 271 U.S. 620, 628 (1926). Read against its common-law background, the provision evinces a clear intent to permit the conviction of accessories to federal criminal offenses despite the prior acquittal of the actual perpetrator of the offense." 447 U.S. at 18-19.
 
 
 22
 The Supreme Court proceeded to conclude that different juries may reach different results, and that "[w]hile symmetry of results may be intellectually satisfying, it is not required." Id. at 25.
 
 
 23
 "It is a well recognized rule that to be found guilty of the crime of aiding and abetting in a criminal venture, a defendant must 'in some sort associate himself with the venture that he participate in it as in something he wishes to bring about, seek by his actions to make it succeed.' Nye & Nissen v. United States, 336 U.S. 613, 619 (1949), quoting Judge Learned hand in United States v. Peoni, 100 F.2d 401, 402 (2d Cir.1938).... We reject the contention of appellant that it must be found that he had an interest or stake in the transaction before he could be convicted for aiding and abetting. See United States v. Taylor, 612 F.2d 1272, 1275 (10th Cir.), cert. denied 444 U.S. 1092 (1980). ... Moreover, it is not necessary that appellant actually touched or possessed the [drugs]."
 
 
 24
 United States v. Winton, 687 F.2d 832, 834-835 (6th Cir.1982).
 
 
 25
 Here, the government presented sufficient evidence that Cady violated federal law and aided and abetted in violation of that law. Accordingly, taking the charge as a whole, it was a fair and adequate representation of the law and there was sufficient evidence for the jury to have found the defendant guilty beyond a reasonable doubt.
 
 IV. Third Assignment of Error
 
 26
 Cady claims that the district court erred in denying her motion to suppress.
 
 Standard of Review
 
 27
 The standard of review that applies to the factual findings by a federal judge in a criminal case considering a motion to suppress evidence is the clearly erroneous standard. United States v. Coleman, 628 F.2d 961 (6th Cir.1980).
 
 Discussion
 
 28
 The defendant argues that her Fourth Amendment rights were violated by Officer Dollahite when he stopped the mobile home. An extensive hearing on the motion to suppress was held.
 
 A. The Initial Stop
 
 29
 Cady's first contention during that hearing was that the stopping of the motor home for speeding was a pretext for an investigation and search for contraband. The vehicle was found to be speeding and, thus, was in violation of Tennessee law. During the hearing, the magistrate judge determined that the evidence taken as a whole made it clear that Officer Dollahite, himself, would not have bothered to pick this vehicle out and stop it simply because it was travelling at eight miles over the speed limit. His real motivation was to make an investigation for other criminal behavior. However, Officer Dollahite's stopping of the vehicle for something other than speeding did not make the stop illegal.
 
 
 30
 The judge entered into an extensive analysis to determine whether a reasonable police officer, with no purpose other than to enforce the traffic laws, would have stopped a large mobile home exceeding the speed limit by eight miles per hour in a metropolitan area at 10:00 pm. After careful consideration, the judge determined that the stop was legal. In United States v. Pino, 855 F.2d 357 (6th Cir.1988), amended, 866 F.2d 147 (6th Cir.1989) cert. denied, 493 U.S. 1090 (1990), the Sixth Circuit held:
 
 
 31
 We need not decide the question whether, if there is adequate reason for a stop based on a traffic violation, it is necessary that it also be shown that this was in fact the reason for the stop. Id. at 361.
 
 
 32
 There was a factual determination that the mobile home was in fact speeding and that a reasonable police officer would have stopped the vehicle. Therefore the stop of the mobile home did not infringe on the defendant's Fourth Amendment rights.
 
 B. The Search of the Mobile Home
 
 33
 The fact that the mobile home was speeding does not, in and of itself, justify the search. The moving vehicle exception to the warrant rule is well established. See, e.g., United States v. Ross, 456 U.S. 798, 825 (1982); Carroll v. United States, 267 U.S. 132, 158-159 (1925); United States v. Crotinger, 928 F.2d 203, 205 (6th Cir.1990).
 
 
 34
 In Ross, the Supreme Court begins that opinion by stating: "In United States v. Carroll [citation omitted], the Court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment." Ross at 456 U.S. 799. The Supreme Court held in Ross that police officers "who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a probing search of compartments and containers within the vehicle whose contents are not in plain view. We hold that they may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant 'particularly describing the place to be searched' ". Id. at 800.
 
 
 35
 Using this determination, Officer Dollahite and the other officers had probable cause to suspect there was contraband aboard the motor home.
 
 
 36
 Accordingly, denial of the motion for suppression was proper.
 
 V. Conclusion
 
 37
 The conviction and sentence are affirmed.
 
 
 
 [1]
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation