# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2593

_____

United States of America,

    Appellee,

  v.

Jose Angel Sanchez,

    Appellant.

     &ast;
     &ast;
     &ast;
     &ast; Appeal from the United States
     &ast; District Court for the Western
     &ast; District of Missouri
     &ast;
     &ast;

_____

Submitted: March 13, 2001
Filed: June 8, 2001

_____

Before MORRIS SHEPPARD ARNOLD, HEANEY, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

TUNHEIM, District Judge.

Appellant Jose Angel Sanchez was convicted of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[2] Sanchez now challenges the sufficiency of the evidence before the jury to sustain his conviction.

_____

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Ortrie D. Smith, United States District Court Judge for the Western District of Missouri presided at trial.

Specifically, Sanchez argues that the government failed to produce sufficient evidence at trial to enable the jury to find beyond a reasonable doubt that he knowingly and intentionally possessed the marijuana that was found in the tractor trailer. We affirm.

## FACTUAL BACKGROUND

On November 16, 1999, Sanchez was traveling east on Interstate 44 in Missouri, driving a tractor trailer. He stopped at the Missouri State Highway Patrol weigh station near Joplin, Missouri, and was met there by Officer John Adams, a commercial vehicle enforcement officer with the Missouri State Highway Patrol. Officer Adams examined the paperwork for the truck and chose to perform a safety inspection.

During the course of the safety inspection, Officer Adams became suspicious of Sanchez's trip. Officer Adams testified that his suspicions were aroused because the trailer lacked proper registration papers; the bill of lading indicated that Sanchez was hauling onions from Springer, Oklahoma;[3] the weight provided on the bill of lading did not match the weight shown by the weigh station scales; and the onions were being kept in a refrigerated trailer at a temperature of 50 degrees.[4] Officer Adams was also suspicious because the trailer only contained a half load of produce, but Sanchez indicated that he was traveling to the east coast.[5] Based on these suspicions, Officer Adams contacted Missouri State Trooper James Musche so that a further investigation could be conducted. Shortly thereafter, Musche arrived at the weigh station,

---

[3] Officer Adams explained that in 25 years on the job, he had never seen produce that originated in Springer, Oklahoma.

[4] Officer Adams testified that it was unusual to transport onions in a refrigerated trailer in November.

[5] This scenario seemed unusual because normally on an extended trip a full load of produce is hauled to make the trip cost-effective.

approached Sanchez and began to question him. Musche testified that Sanchez appeared nervous while the two talked, rubbing his arms and having a difficult time sitting still. Musche also noticed that Sanchez's palms were wet.

Musche eventually asked Sanchez if he could search the trailer. Sanchez consented. Musche then asked for a key to the trailer, which Sanchez provided, and began a search of the trailer. During his search, Musche noticed what appeared to be new metal trim in the corners of the nose of the trailer. He testified that the metal caught his attention because it was different from the metal in the rest of the trailer. Musche also testified that the back wall of the trailer appeared unusual and that he suspected it contained a false compartment. After further inspection, Musche saw what appeared to be a brick of marijuana through a gap in the back wall of the trailer. Musche proceeded to disassemble a fake wall, finding approximately 2,265 pounds of processed, packaged marijuana. The marijuana was packaged in 780 individual bricks spanning the height and width of the trailer.[6] Sanchez was then arrested and read his Miranda[7] rights.

Trooper Musche also contacted Corporal Thomas J. Stevens of the Missouri State Highway Patrol, Division of Drug and Crime Control. Upon arriving, Corporal Stevens began to question Sanchez. Sanchez told Stevens that he had no knowledge of the marijuana. He also told Stevens that from November 4th through 6th he was traveling between Brooklyn, New York and St. Cloud, Minnesota, in the same trailer. Sanchez also said that he picked up the load of onions at Coseman's Produce in Springer, Oklahoma and that he was to deliver the produce to Coseman's Produce in Pittsburgh, Pennsylvania. When asked who he worked for, Sanchez responded that he

---

[6] Unloading the marijuana from the trailer required ten police officers, two pick-up trucks, a forklift and a loading dock.

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

was working for "Coral Trucking" of Miami, Florida, and that he had been working for that company for about one month. Sanchez also acknowledged that he had been in possession of the truck during the entire course of his current trip and that the longest that it had been out of his sight was for eight or nine hours, while he was sleeping in a hotel.

Much of this information provided by Sanchez later turned out to be either false or inconsistent with other evidence discovered during the course of the investigation of this matter. A search of the passenger compartment of the truck later revealed sales receipts from a store located in El Paso, Texas. Those receipts indicated a purchase of gasoline and new tires in El Paso on November 5, 1999, a date on which Sanchez told officers he was traveling between New York and Minnesota. Subsequent investigation also revealed that the street address provided by Sanchez for Coseman's Produce in Oklahoma did not exist, that there was no telephone listing for such a business in Springer, Oklahoma, and no registered entity of that name doing business in Oklahoma. The investigation turned up similar results regarding the Pittsburgh address that Sanchez provided as his destination: the street address given by Sanchez did not exist; no telephone listing was found; and no entity with the name Coseman's was registered with the Pennsylvania Secretary of State.

The co-owners of Coral Trucking indicated that they had never met Sanchez and that he never worked for their company. The owners also denied having ever received paper work from Sanchez or having spoken with him by phone, as Sanchez had told the authorities. The owners also told investigators that Coral Trucking operated exclusively east of Tennessee and did not ship produce.

Sanchez also told the officers that he had received the bill of lading from a representative of Coseman's and had not written it himself. Officer Stevens noted that the bill of lading misspelled Pittsburgh as "Pipsburg," and when asked to spell

-4-

Pittsburgh, Sanchez spelled it "Pipsburg," just as had been written on the bill of lading.[8] The investigation also revealed nine blank bill of lading forms in the cab of the truck identical to those on which the alleged bill of lading for Sanchez's truck was written. The blank forms were found in two packages of five, with one form missing from the second package.

The officers also found a number of items in the cab of the truck that could have been used to build the fake wall in the trailer. The officers found a cordless drill with a phillips head drill bit and a package of phillips head screws, some of which were similar to or matched those used to construct the false compartment. The officers also found two sales receipts from a Home Depot store in El Paso, Texas, from November 6th and 7th, 1999, reflecting the purchase of items consistent with those used in the false compartment.

At trial, Sanchez testified and maintained that he did not know that the marijuana was in the trailer and that he never accessed the storage compartment of the trailer where much of the physical evidence was recovered. Sanchez also gave a different explanation at trial regarding the loading of the trailer and his employer than he had first given to police after the arrest. At trial, Sanchez testified that two people had led him to a warehouse in Springer, Oklahoma, and once there had loaded the trailer outside of his view. Sanchez also testified that he did not work directly for Coral Trucking, but was a subcontractor working through Roberto Valdez, who hired him to drive the tractor.[9]

---

[8] However, in his logbook, Sanchez had spelled Pittsburgh differently than it was spelled on the bill of lading.

[9] Papers found in the truck identified Valdez as the owner of the truck.

The jury convicted Sanchez on the only count in the indictment and the district court sentenced Sanchez to 97 months in prison. Sanchez filed this timely appeal.

## DISCUSSION

### I. Standard of Review

Evidence is sufficient to support a verdict if "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). "We view the evidence in the a light most favorable to the verdict, giving the verdict the benefit of all reasonable inferences, and will reverse only if the jury must have had a reasonable doubt concerning one of the essential elements of the crime." <u>United States v. Sandifer</u>, 188 F.3d 992, 995 (8th Cir. 1999).

### II. Sufficiency of the Evidence

Sanchez challenges the sufficiency of the evidence to sustain his conviction for possession with intent to distribute. More specifically, Sanchez argues that no reasonable jury could find that Sanchez had knowingly possessed the marijuana that was found in the tractor trailer. Sanchez contends that the government did not proffer sufficient evidence for the jury to conclude that Sanchez had either actual or constructive possession of the drugs or that he was deliberately ignorant of their presence. We disagree. Because Sanchez had complete and sole control over the tractor trailer in which the drugs were concealed and because the jury could have inferred from the inconsistencies in Sanchez's testimony that he knowingly possessed the drugs, the jury verdict is affirmed.

In order to establish a violation of 21 U.S.C. § 841(a)(1), the government had to prove beyond a reasonable doubt that Sanchez knowingly possessed and intended to distribute the marijuana found in the tractor trailer. United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001) (citing United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997)). Proof of constructive possession satisfies the element of knowing possession under § 841(a)(1). Id. "Constructive possession of drugs can be established if a person has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" McCracken, 110 F.3d at 541 (quoting United States v. Ojeda, 23 F.3d 1473, 1475 (8th Cir. 1994)).

Sanchez relies heavily on United States v. Pace, 922 F.2d 451 (8th Cir. 1990), to support his argument that he did not knowingly possess the marijuana found in his tractor trailer. In Pace, we held that there was insufficient evidence to prove that the driver of a station wagon knowingly possessed 200 pounds of cocaine concealed in the luggage of his traveling companion. Id. at 452. However, Pace is distinguishable from this case for two primary reasons. First, in Pace, the defendant did not have sole control over the vehicle in which the contraband was found, but instead was traveling with another person who not only had made the arrangements for the trip but had also packed the luggage containing the drugs himself. Id. at 453. Here, Sanchez was the only person in the tractor trailer when the drugs were discovered. Second, in Pace, the defendant provided the officer with truthful information when questioned. Id. at 452. In this case, Sanchez gave the investigating officers false and inconsistent information when questioned. *Pace* is therefore inapposite.

The facts in United States v. Cortez, 935 F.2d 135 (8th Cir. 1991), however, are strikingly similar to those in this case. In Cortez, the defendant was stopped after a state trooper observed his van weaving from the shoulder of the highway across the centerline. Id. at 136. Cortez was the only person in the van, and when asked for the vehicle registration, responded that his uncle owned the van. Id. at 136-37. However,

when pressed for the name of his uncle, Cortez replied that he didn't know. Id. Cortez then told the officer that he was traveling to Illinois, but could not tell the officer where in Illinois he was going. Id. After obtaining Cortez's consent to search the van, the officer discovered a discrepancy between the length of the interior and exterior walls of the van. Id. Further inspection of the van revealed 800 pounds of marijuana concealed in a false compartment in the van. Id. Cortez maintained that he had no knowledge of the marijuana and challenged the sufficiency of the evidence concerning his knowing possession of the contraband. Id.

In Cortez, we distinguished the facts of that case from the facts in United States v. Pace. Id. at 143. In Cortez, we reasoned, as we do here, that sole control and dominion over the vehicle in which contraband is discovered is alone sufficient to satisfy the government's burden of knowing possession. Id. (citing United States v. Muniz-Ortega, 858 F.2d 258 (5th Cir. 1988)). We also noted in Cortez, that defendant's evasive answers to the police removed any doubt as to the submissibility of the case to the jury. Id.

Here, as in Cortez, Sanchez had sole control and dominion over the tractor trailer in which the marijuana was found. While this fact alone satisfies the government's burden with respect to knowing possession, this was not the only evidence presented to the jury on the issue. The inaccuracies in Sanchez's responses to the questions of the investigating officers as well as the inconsistencies between those responses and his testimony at trial were enough to permit the jury to draw the inference that Sanchez either knew the drugs were in the trailer or that he consciously avoided discovering them. The evidence proffered by the government was therefore sufficient to sustain the jury's verdict.

The judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.