# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3010

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Elbert L. Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2002
Filed: March 27, 2002

_____

Before LOKEN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Elbert L. Johnson was discovered transporting more than 2,200 pounds of cocaine, he was prosecuted and convicted by a jury of conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute, § 841(a)(1). He was sentenced by the district court[1] to thirty years. On appeal, he argues that his Fourth Amendment rights were violated by the search of his truck at

_____

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

a weigh station and that there was insufficient evidence to support his convictions. We affirm.

The case against Johnson began after he stopped at a truck weigh station on an interstate highway near Hope, Arkansas in the early hours of September 18, 2000. Arkansas Highway Police officer Tim Choate was on duty at the station, and he asked Johnson to come inside with his paperwork. The other driver of the tractor trailer, Joseph Heck, remained in the sleeper portion of the truck.

Federal regulations require commercial vehicle operators to keep a logbook recording travel time, departure and destination points, and each driver's on duty time. The logbook must contain complete information for the current day and the previous seven days. Choate discovered that Johnson's logbook was missing information for the first three days of the period and contained incomplete entries for the remainder. Johnson explained that he had been off duty in Tulsa, Oklahoma during the missing days.

Choate asked Johnson what he was transporting and where the load was going. Johnson replied that the truck was loaded with honeydew melons, but that he was unsure of its destination, stating that it was "someplace in Connecticut or in Maryland." The shipping papers listed the town of Jessup, Maryland as the destination with no street address.

Choate noticed that Johnson's logbook showed he had started the trip in Bakersfield, California, and he asked Johnson how he got there. Johnson replied that he had flown out from Tulsa to Bakersfield to meet the truck. The logbook also showed the truck had made a stop in El Paso, Texas. El Paso is several hundred miles off a direct route from the starting point in California to Maryland or Connecticut, as is the highway on which the weigh station was located. When Choate asked Johnson why he had chosen to take such an indirect route, Johnson became evasive and did

not answer. Choate then performed a routine driver license and criminal history check, which revealed that Johnson had a number of drug related convictions on his record.

Choate walked out to the truck to perform a safety inspection on the load, and Johnson accompanied him. Choate noticed several unusual things about the locks on the truck. The main lock was of a type impervious to bolt cutters, and the truck's vent door, a small door permitting inspection of the load, was locked. Choate had more than twelve years of law enforcement experience but had never before seen a lock like the main lock and had never known a vent door to be kept locked. He asked Johnson to open the locks, and Johnson went over to the truck to get the keys from Heck. Choate observed him whispering something to Heck but could not hear it. Heck testified later that Johnson had said, "If I was you, I think we're caught, I'd run."

Johnson had told Choate that the entire load of produce on the trailer was on pallets. When Choate climbed up to inspect the load, however, he noticed a large number of boxes on the floor of the trailer. Johnson explained that he had moved the boxes in order to redistribute the weight on the trailer's axles, but it appeared to Choate that the boxes had been merely taken off the pallets rather than moved around. The pile of boxes was sufficient to fill three or four pallets, but Choate noticed only one empty pallet. When Choate started to move some of the boxes around, Johnson jumped up into the truck and moved a load lock into place against the boxes. That action did not appear necessary to Choate, and he asked Johnson whether he had anything illegal in the truck. Johnson replied, "Nothing here you need to see."

Choate and Johnson returned to the weigh station, and Choate called for assistance from another Arkansas Highway Police officer who was located at a second weigh station on the other side of the highway. Choate later testified that he made the call because he had become suspicious of illegal activity and concerned for his safety. It took the other officer approximately five minutes to arrive. Meanwhile,

Choate asked Johnson for written consent to search the truck and trailer. Johnson asked why, and Choate informed him that he wanted to search for drugs. Johnson signed a "Consent to Search" form, and Choate testified that Johnson and he had discussed the form and Johnson had read it before signing. At this point Choate still retained Johnson's keys, driver license, and other papers.

After the second officer arrived, Choate began to search the trailer. He found a box containing plastic wrapped bricks, one of which field tested positive for cocaine. Johnson and Heck were then arrested. The search uncovered 40 boxes containing approximately 1,000 bricks of 82% pure cocaine weighing 2,213 pounds. The officers also discovered more than $10,000 in currency in the cab of the truck and more than $3,000 on Johnson's person.

At Johnson's initial appearance in state court, after having been advised of his rights under Miranda v. Arizona, 384 U.S. 486 (1966), he made a voluntary statement declaring: "I know I was wrong for what I did and I am willing to pay for what I did." Johnson was subsequently charged in a federal indictment with one count of conspiracy to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II), 846, and one count of possession with intent to distribute. §§ 841(a)(1), 841(b)(1)(A)(ii)(II).[2]

Before trial Johnson moved to suppress all of the evidence discovered during the weigh station stop. He claimed that Choate had neither a warrant nor probable cause to detain him and search his truck and that the written consent to search was not voluntary. The court denied his motion, finding that Johnson had been lawfully detained in a regulatory stop and that Choate had "developed a reasonable, articulable

---

[2]Johnson was charged with a third count of conspiracy to distribute cocaine through the use of a cellular telephone, in violation of 21 U.S.C. § 843. This count was later dismissed by the government.

suspicion of criminal activity" through his interaction with Johnson. This permitted Choate to continue the detention and to search the truck. It also found that Johnson made a valid written consent to search.

At trial, the jury heard evidence regarding the company listed on the bill of lading, which was J&B Trucking. J&B was owned by Johnson, and a former employee testified that the company paid all of its bills with cash or money orders. The name "Angela Billingslea" was placed on all paperwork, including the title to the trailer in which the cocaine had been transported, and Johnson routinely signed documents with this name. The employee also testified that Johnson came into the office only about 30 minutes a week and only drove a truck once during the eight month period of her employment.

The defense called Joseph Heck as an adverse witness. Heck testified that he had begun working for Johnson in February 2000. In September 2000, Johnson directed Heck to pick up a load of honeydew melons in Woodland, California. From there, Heck drove to Bakersfield where he met Johnson, and the two continued to El Paso. Along the way they rearranged the melons in the truck in order to create an igloo shaped space for a load Johnson said they would add in El Paso. Heck testified that he saw Johnson meet with several Hispanic men after they arrived in El Paso. Afterwards Heck and Johnson drove the truck to a building which was surrounded by two sets of gates topped by barbed wire. Once inside they donned cloth work gloves and loaded forty cardboard boxes into the truck which Johnson said were destined for Chicago. After leaving El Paso, Johnson made several cellular phone calls during which Heck heard him say "We're on time" and "She's on board." Heck was to have received $5,000 for his work on the trip, but he testified that after they were arrested, Johnson offered him $50,000 to "take the rap."

Johnson attacked Heck's testimony as self interested and motivated by his plea bargain. His theory of defense was that Heck had the cocaine loaded in California

without his knowledge. He also presented an expert witness, transportation broker David Dwinell, who had examined the truck's weigh station scale receipts. Dwinell testified that the total weight of the truck had not varied by more than 1,000 pounds between California and Arkansas. Because the cocaine weighed more than 2,200 pounds, Dwinell concluded that it could not have been loaded in El Paso as Heck had claimed. One of the receipts most important to Dwinell's calculations was dated September 16, the day before the cocaine was loaded in El Paso according to Heck. In rebuttal the government called the accountant at the truck stop where the receipt had been printed, who testified that the date on the receipt was wrong and that it had in fact been printed on September 17.

Johnson moved for acquittal at the conclusion of the government case and again at the end of all of the testimony. The motions were denied, and Johnson was convicted on both counts. The court sentenced him to concurrent thirty year prison terms, a $25,000 fine, and five years of supervised release.

Johnson appeals on two grounds. He contends that the court erred in denying his motion to suppress the evidence obtained from the weigh station search of the truck. He further argues that he is entitled to an acquittal because there was insufficient evidence. We review the district court's legal conclusions de novo and its factual findings for clear error. United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001).

Johnson concedes the validity of the initial weigh station stop and inspection, but he argues that his detention was unjustly extended in violation of his Fourth Amendment rights and that the evidence seized as a result must be suppressed. He also contends that because his continued detention was illegal, his written consent was not valid. It is undisputed that Johnson's stop at the weigh station started as a routine examination for compliance with federal and state safety and hauling regulations. See, e.g. Ark. Stat. Ann. § 23-13-217. Cf. United States v. Burch, 153

F.3d 1140, 1141 (10th Cir. 1998) (upholding the validity of a routine commercial vehicle safety inspection under state law). The law may permit a longer detention under certain circumstances. An officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for a traffic stop and detain a vehicle and its occupants for further investigation. United States v. Poulack, 236 F.3d 932, 935-36 (8th Cir. 2001), cert. denied, __ U.S. __, 122 S. Ct. 148 (2001). Whether an officer had reasonable suspicion to expand the scope of a stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." Id. at 936 (quoting United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1994)). See also United States v. Morgan, 270 F.3d 625, 631 (8th Cir. 2001) (Fourth Amendment is not violated if officer had reasonable suspicion to detain a vehicle for the length of time necessary to investigate).

At the hearing on the motion to suppress, Officer Choate cited a number of facts causing him to continue to detain Johnson. These included incomplete logbook entries, Johnson's confusion as to his final destination, and the incomplete address in the bill of lading. The truck's route, several hundred miles longer than necessary, was particularly noteworthy to Choate. Produce spoils easily and is generally transported as directly as possible. Johnson's trip also included a plane flight and seemed unusually costly in light of the typically low profit margin of commercial trucking. Johnson became evasive when asked about the route, and Choate noted the whisper to Heck, Johnson's criminal history involving drugs, and his comment "Nothing here you need to see." Choate also observed the unusual locks and Johnson's strange behavior when he got in the truck. Taken together, these facts generated the reasonable suspicion of criminal activity necessary to justify Johnson's continued detention. His written consent to the search was therefore not obtained through an illegal detention.

The two Fifth Circuit cases cited by Johnson are not in conflict with this conclusion, see United States v. Dortch, 199 F.3d 193 (5th Cir. 1999), corrected on

denial of reh'g, 203 F.3d 883 (5th Cir. 2000), and United States v. Jones, 234 F.3d 234 (5th Cir. 2000). This case is unlike Dortch and Jones, for here grounds for reasonable suspicion were generated in the course of the initial questioning and safety inspection and were sufficient to justify detaining Johnson beyond the conclusion of the inspection. We conclude that Johnson's Fourth Amendment rights were not violated and that the district court did not err by denying the motion to suppress.

Johnson contends that the government did not present evidence sufficient to show that he knowingly possessed cocaine with the intent to distribute it or that he had any knowledge of a conspiracy to distribute cocaine or that cocaine was in the truck. A conviction for possession to distribute a controlled substance requires that the government prove beyond a reasonable doubt that the defendant knowingly possessed and intended to distribute a controlled substance. 18 U.S.C. 841(a)(1); United States v. Gonzalez-Rodriguez, 239 F.3d 948, 951 (8th Cir. 2001). A conviction for conspiracy to distribute drugs requires proof of an agreement between the defendant and at least one other person to engage in the distribution of drugs. United States v. Miller, 91 F.3d 1160, 1162 (8th Cir. 1996), including proof that the defendant knew about the agreement and knowingly became a part of the conspiracy. United States v. Ivey, 915 F.2d 380, 383-84 (8th Cir. 1990).

We review de novo the sufficiency of the evidence to support a conviction. Evidence is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Sanchez, 252 F.3d 968, 972 (8th Cir. 2001). We view the evidence in the light most favorable to the verdict, drawing all reasonable inferences and resolving all conflicts in its favor. Id. Proof of constructive possession is sufficient to prove the element of knowing possession, that is proof of ownership or control over the drugs or the area in which they are concealed. Gonzalez-Rodriguez, 239 F.3d at 951 (quoting United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997)). The jury was presented with ample evidence that Johnson was aware of the cocaine in the truck and was transporting it

as part of an agreement to distribute it.  It was up to the jury to weigh the evidence which was more than sufficient to support its verdicts.

Accordingly, we affirm the judgment of the district court.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.