# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3241

_____

United States of America,

        Appellee,

v.

Casimiro Gaona-Lopez,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
District of Nebraska.

_____

Submitted: February 16, 2005
Filed: May 23, 2005

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

After a jury convicted Casimiro Gaona-Lopez (Gaona-Lopez) of attempted possession with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, the district court[1] sentenced him to 188 months imprisonment. On appeal, Gaona-Lopez contends (1) insufficient evidence supports the conviction, and (2) the district court failed to give the jury a mere presence instruction. We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I.     BACKGROUND

In September 2003, Columbus (Nebraska) Police Department (CPD) members arrested Julio Ramirez (Ramirez) for conspiring to distribute methamphetamine and Pedro Ranteria (Ranteria) for possessing methamphetamine and for possessing a firearm in connection with the methamphetamine. Ramirez informed police he rented a storage unit (unit) at a storage facility in Columbus. Ramirez also informed police Ranteria and Jose Reyes (Reyes) were involved in the unit with him. Ramirez did not mention Gaona-Lopez. Ramirez then consented to a search of the unit. When police officers searched the unit, they discovered a white Honda. The Honda was not registered to Ramirez, Ranteria or Gaona-Lopez. When the officers searched the Honda pursuant to a search warrant, they discovered two packages of methamphetamine in a tire well and eleven packages of methamphetamine inside a modified fuel tank. The thirteen packages contained a total of 7.7 pounds of methamphetamine, which had a street value of between $26,950 and $149,511.

To learn more about who was involved with the Honda that contained the methamphetamine, the police worked with the storage facility's owner to lock the unit so anyone wanting to access the unit had to first contact the owner, who would then contact the police. Nearly a month later, Jesus Rios Jr. (Rios) contacted the owner to gain access to the unit containing the Honda. When Rios and Gaona-Lopez arrived at the storage facility in Gaona-Lopez's vehicle with Rios driving, Rios went into the storage facility's office to inquire about the unit. After Rios made this contact, the police arrested both men. CPD Investigator Douglas Molczyk (Investigator Molczyk) arrested Gaona-Lopez, who had not left the vehicle while at the storage facility. During Gaona-Lopez's arrest, Investigator Molczyk seized an automobile key from Gaona-Lopez that fit the Honda. Specifically, the key opened the driver-side and passenger-side doors, and started the vehicle.

After Investigator Molczyk arrested Gaona-Lopez and advised him of his Miranda rights, Gaona-Lopez stated he did not know what was in the unit and simply

-2-

was doing "Rios a favor by bringing him there." When Investigator Molczyk asked Gaona-Lopez about the key retrieved from him, Gaona-Lopez said the key belonged "to a minivan that he owned." After Investigator Molczyk informed Gaona-Lopez the key opened the Honda's doors and started the engine, Gaona-Lopez countered by explaining Honda keys fit all other Hondas. When Investigator Molczyk pressed the issue and said the key actually fit the Honda containing 7.7 pounds of methamphetamine, Gaona-Lopez said the "key fit a Honda that he had sold his cousin in Mexico and that he had not mailed the key to him yet."

The government charged that Gaona-Lopez (1) knowingly and intentionally combined, conspired, confederated and agreed with other persons to possess with intent to distribute more than 500 grams of methamphetamine (Count I), 21 U.S.C. §§ 841(a)(1), (b)(1), 846; and (2) knowingly and intentionally attempted to possess with intent to distribute more than 500 grams of methamphetamine (Count II), 21 U.S.C. §§ 841(a)(1), (b)(1), 846. Before trial, the government dismissed Count I, and tried Gaona-Lopez only on Count II.

At trial, Rios testified for the government stating: (1) Rios speaks both Spanish and English; (2) Gaona-Lopez does not speak English; (3) Gaona-Lopez asked him to call the storage facility to ask why Gaona-Lopez's key did not work on the unit, and Rios twice called the storage facility on Gaona-Lopez's behalf; (4) Rios drove Gaona-Lopez to the storage facility at Gaona-Lopez's request; (5) Gaona-Lopez directed Rios where to park at the storage facility, gave Rios a key to the unit, and asked Rios to go inside the storage facility's office to see why the key did not fit the unit; (6) when inside the office, Rios spoke to a person he believed was the facility's manager, but later discovered was law enforcement; (7) when the officer asked if Rios was the owner of the unit, Rios told the officer he "just came down here to interpret for this other guy"; (8) Gaona-Lopez told Rios a white car was inside the unit; (9) Rios's trip to the storage facility on Gaona-Lopez's behalf was Rios's first time

-3-

he had been to Columbus; (10) Gaona-Lopez never mentioned drugs; and (11) Rios had no knowledge methamphetamine was inside the Honda.

At the close of the government's case, Gaona-Lopez moved for a judgment of acquittal, arguing "the government has failed to make their prima facie burden in that it never established that [Gaona-Lopez] acknowledged there was anything in there." The district court denied the motion.

At trial, Gaona-Lopez testified: (1) Rios wanted to drive to Columbus to pick up a key from the storage facility, and Gaona-Lopez was just riding along so he could go to Grand Island; (2) over a two-year period, Gaona-Lopez was paid to deliver fifteen to twenty cars to Mexico; (3) Gaona-Lopez knew nothing about the storage facility or the unit; (4) the key Investigator Molczyk said he seized from Gaona-Lopez and admitted into evidence did not belong to Gaona-Lopez; (5) Gaona-Lopez knew nothing about a Honda or drugs inside the Honda; (6) Gaona-Lopez did not give Rios a key to the unit, and he did not ask Rios to go to Columbus; (7) Gaona-Lopez allowed Rios to drive Gaona-Lopez's vehicle so Rios could drive to Columbus; and (8) Gaona-Lopez denied Investigator Molczyk was the officer who arrested him. At the end of Gaona-Lopez's case, he again moved for a judgment of acquittal, which the district court denied.

For rebuttal, the government recalled Investigator Molczyk, who testified he arrested Gaona-Lopez at the storage facility, interviewed him, retrieved a key from Gaona-Lopez's right-hand coat pocket, and used the key on the Honda which had been inside the unit.

A jury convicted Gaona-Lopez of attempted possession with intent to distribute more than 500 grams of methamphetamine. The district court entered judgment and sentenced Gaona-Lopez to 188 months imprisonment.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Gaona-Lopez argues insufficient evidence supports the guilty verdict because the government failed to prove Gaona-Lopez knew about the concealed methamphetamine or exercised dominion and control over the methamphetamine. Gaona-Lopez "confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). We "view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). "We may reverse only if no reasonable jury could have found [Gaona-Lopez] guilty." Id.

The fighting issue in this case is whether the government proved Gaona-Lopez knowingly attempted to possess methamphetamine. 21 U.S.C. § 841(a)(1); United States v. Cole, 380 F.3d 422, 425 (8th Cir. 2004). Possession can be either actual or constructive, and the government can prove constructive possession "by showing that a defendant 'had ownership, dominion, or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" Id. (quoting United States v. Schubel, 912 F.2d 952, 955 (8th Cir. 1990)).

Gaona-Lopez contends United States v. Pace, 922 F.2d 451 (8th Cir. 1990), "is dispositive," and requires reversal. In Pace, two individuals, Philip Pace (Pace) and Thomas Mason (Mason), were arrested after the car in which they were traveling was found to contain nearly 200 pounds of cocaine. Id. at 451-52. When a police officer pulled their car over for speeding, Pace was driving and Mason was in the passenger seat. Pace did not own the car. Both men were charged with possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine, and the two men were tried together. Id. at 452. At trial, Pace claimed he did not know about the cocaine and was hired by Mason to drive the car. Mason testified he did not

inform Pace what was inside Mason's luggage, in which cocaine was discovered. Mason also testified that, when Pace asked who was in the black van traveling alongside Pace and Mason, Mason told him "it was none of his business." Id. at 453. A jury convicted Mason on both counts, while it only convicted Pace of possession with intent to distribute. Id.

Pace appealed, contending insufficient evidence supported his conviction, because no evidence established he knew about the cocaine. A split panel of this circuit reversed Pace's conviction, concluding "the evidence is insufficient to justify a reasonable inference that Pace knew he was driving a car full of cocaine." Id. Describing how the jury was presented with plenty of evidence that Pace knew about the cocaine, the dissent maintained the court should have affirmed Pace's conviction. Id. at 454-58 (Magill, J., dissenting).

Noting another panel distinguished Pace when confronted with facts similar to Gaona-Lopez's case, we also distinguish Pace, and conclude Pace does not provide the refuge Gaona-Lopez seeks. In United States v. Sanchez, 252 F.3d 968, 970 (8th Cir. 2001), highway patrol officers discovered 2265 pounds of marijuana concealed inside a fake wall inside the defendant's tractor-trailer. The defendant claimed he had no knowledge of the marijuana, and made a number of statements to the officers at the scene. Id. The officers determined most of those statements were false. Id. at 970-71. Later, at his trial, the defendant provided testimony that differed from the statements he made at the time of his arrest. Id. at 971-72. A jury convicted the defendant of possession of marijuana with intent to distribute. Id. at 972. The defendant appealed, contending insufficient evidence supported the conviction, because no evidence revealed the defendant knowingly possessed the marijuana found inside the trailer. The defendant relied heavily on Pace in arguing for a reversal, but the court easily distinguished Pace for two reasons. First, the defendant had sole control over this tractor-trailer, unlike Pace, who was riding with another person who made the trip arrangements. Id. at 972-73. Second, Pace provided

-6-

truthful information when questioned, whereas the defendant in Sanchez "gave the investigating officers false and inconsistent information when questioned." Id. at 973. Similarly, the court noted that, in addition to providing inconsistent information to the officers at the scene, the defendant gave additional inconsistent testimony before the jury. Id. The court upheld the defendant's conviction. Id.

Comparing the facts of Pace with the facts of Gaona-Lopez's case, Rios was in a situation similar to Pace, while Gaona-Lopez occupied a position more akin to that of Mason. We believe a reasonable jury could find Rios was uninformed about the Honda containing 7.7 pounds of methamphetamine, while finding Gaona-Lopez orchestrated the trip to the storage facility in an attempt to access the Honda, which contained his methamphetamine. Sanchez supports this view. When Rios and Gaona-Lopez attempted to access the unit, Gaona-Lopez possessed the keys to the unit and to the Honda. Similar to the defendant in Sanchez, Gaona-Lopez had sole control over the unit and the Honda, as Rios simply helped Gaona-Lopez due to Gaona-Lopez's inability to speak English. When arrested, Gaona-Lopez exhibited the same conduct as did the defendant in Sanchez by providing false and inconsistent information to the police at the scene and later at trial. Following the Sanchez court's lead, we, too, find Pace distinguishable.

In another context, i.e., possession of a key to a residence rather than a key to a car, our court in United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989), determined possession of a key to the front door of a crack house was a "significant link showing [defendant's] participation in the [drug] conspiracy." Finding sufficient evidence for a jury to convict, we noted "every other circuit to address this issue agrees that the holder of the key, be it to the dwelling, vehicle or motel room in question, has constructive possession of the contents." Id. n.3 (citations omitted). In Brett, we concluded "proof of possession of the key to the front door of the house is sufficient evidence to prove the 'knowing possession' element." Id. So too is Gaona-

Lopez's possession of the unit key and the Honda key sufficient evidence to prove knowing possession of the methamphetamine concealed inside.

Gaona-Lopez tried to convince the jury he had no connection to the unit, the Honda, or the methamphetamine inside the Honda. A jury rejected Gaona-Lopez's testimony and defense, and concluded the government proved beyond a reasonable doubt that Gaona-Lopez knowingly attempted to possess methamphetamine. "It is axiomatic that we do not review questions involving the credibility of witnesses, but leave credibility questions to the jury." United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004). Indeed, we do not sit as Gaona-Lopez's second jury, Pace, 922 F.2d at 452, and we are completely "[u]nwilling to usurp the jury's unique role in judging the credibility of witnesses," Dabney, 367 F.3d at 1043. "The jury is free to believe the testimony of any witness in its entirety, or to reject that testimony as untrustworthy." United States v. One Star, 979 F.2d 1319, 1321 (8th Cir. 1992). Given the jury's ultimate task to determine the facts and assess the credibility of the witnesses, Gaona-Lopez faces an uphill battle on appeal to convince us the jury had no evidence upon which it could reasonably convict him.

Although the evidence against Gaona-Lopez certainly was not overwhelming, the evidence was sufficient for a jury reasonably to convict Gaona-Lopez. To be sure, the jury made its credibility determinations, believing the testimony given by Rios and Investigator Molczyk, and dismissing Gaona-Lopez's testimony. Viewing the evidence in the light most favorable to the government and resolving all inferences in favor of the conviction, we conclude the following evidence supports the jury's conviction: (1) Gaona-Lopez enlisted Rios to gain access to the unit after the police locked the unit, which could have prompted the jury to ask what Gaona-Lopez wanted inside the locked unit; (2) Gaona-Lopez informed Rios about a car inside the unit, which tracked the vehicle found inside the unit; (3) Gaona-Lopez possessed keys to the storage facility and to the Honda that concealed the methamphetamine, which was strong evidence establishing ownership, dominion and control over the Honda

and its secreted drugs; (4) Gaona-Lopez lied about having a key to the Honda, first contending it belonged to a minivan, then declaring all Honda keys fit all other Honda vehicles, and finally maintaining the key belonged to a Honda he sold to his cousin in Mexico, which could have prompted the jury to believe Gaona-Lopez was attempting to cover up criminal behavior; (5) Gaona-Lopez testified at trial (a) he knew nothing about the storage facility or the Honda, (b) he only went to the facility for Rios's benefit, (c) the key admitted into evidence was not the key Investigator Molczyk retrieved from him, and (d) Investigator Molczyk did not arrest him; all evidence the jury was free to reject and which could have further supported the jury's belief that Gaona-Lopez was covering up criminal behavior; and (6) the Honda contained 7.7 pounds of methamphetamine with a street value of between $26,950 and $149,511, which is powerful evidence Gaona-Lopez, the possessor of the Honda's key, knew what was inside the Honda. United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004) (holding that, in a constructive possession case, a "large quantity of drugs involved is evidence of the defendants' knowledge," because "it is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there").

We conclude Gaona-Lopez's conviction for attempted possession with intent to distribute more than 500 grams of methamphetamine is supported by sufficient evidence.

### B.    Mere Presence Instruction

Gaona-Lopez also expended one paragraph in his brief arguing the district court erred by failing to give the jury a mere presence instruction. When asked at trial whether he had any objections to the jury instructions, Gaona-Lopez's attorney replied, "No, I don't." A "defendant is entitled to a theory-of-defense instruction that is timely requested, correctly states the law, and is supported by the evidence." Id. at 636. In reviewing appellate challenges to jury instructions, we grant the district court wide discretion in formulating the instructions, which we "affirm if the entire

charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." United States v. Sdoulam, 398 F.3d 981, 993 (8th Cir. 2005) (citation omitted). However, when a defendant fails to offer an instruction or does not object to an instruction provided by the court, we review the jury instruction for plain error. See United States v. Williford, 309 F.3d 507, 509 (8th Cir. 2002). "Plain error review is extremely narrow and is limited to those errors which are so obvious or otherwise flawed as to seriously undermine the fairness, integrity, or public reputation of judicial proceedings." United States v. Beck, 250 F.3d 1163, 1166 (8th Cir. 2001).

Last year, we rejected a similar appeal criticizing the district court for failing to give a mere presence instruction to the jury. In Serrano-Lopez, 366 F.3d at 637, two defendants charged with possessing cocaine with intent to distribute defended on a theory that the government "failed to carry its burden on two elements of constructive possession–knowledge and control." Based on this defense theory, the defendants sought a mere presence instruction, which the district court refused to give. On appeal, our court held "the giving of the mere-presence instruction in this case would have duplicated the instructions outlining the elements of the offense, the definition of possession, and the burden of proof." Id.

In Gaona-Lopez's case, the district court properly instructed the jury on Gaona-Lopez's presumption of innocence, the government's burden of proof, the elements of attempted possession with intent to distribute, and properly defined possession and knowledge. Given the plain-error standard of review in this case, the precedential effect of Serrano-Lopez, and the less compelling facts for a mere presence instruction than existed in Serrano-Lopez, 366 F.3d at 639-43 (Riley, J., dissenting in part), we conclude the district court did not err by failing to give, *sua sponte*, a mere presence instruction.

### III. CONCLUSION

For the foregoing reasons, we affirm Gaona-Lopez's conviction.

_____